Nos. 42,937 and 42,954 Consolidated

Home Finance Corporation, Inc., *Appellant* and *Cross Appellee*, The State Bank of Satanta, Satanta, Kansas, *Appellant* and *Cross Appellee*, v. Charles H. Cox; Irma M. Cox Shimek; L. E. Woolley, C. K. Glenn, Sallie Glenn, Eleanor Patterson and Charles R. Glenn, d/b/a Auto Finance; The First State Bank of Osborne, Kansas, *Appellees*.

(376 P. 2d 884)

554

Opinion filed December 8, 1962.

*Robert Osborn,* of Stockton, argued the cause, and *Lloyd C. Bloomer,* of Osborne, was with him on the briefs for appellant, Home Finance Corporation, Inc.

*D. O. Concannon,* of Hugoton, argued the cause, and *Arthur B. McKinley,* of Hugoton, and *O. D. Gregory* and *Donald D. Gregory,* of Osborne, were with him on the briefs for appellant, The State Bank of Satanta.

*W. McCaslin,* of Stockton, argued the cause, and *Louis D. James,* of Wichita, was with him on the briefs for appellees, L. E. Woolley, C. K. Glenn, Sallie Glenn, Eleanor Patterson and Charles R. Glenn, d/b/a Auto Finance; The First State Bank of Osborne, Kansas.

The opinion of the court was delivered by

FATZER, J.: This was a replevin action involving the rights of various parties under chattel mortgages to the possession of a house trailer, or its value.

The district court adopted the agreed statement of facts of the parties as its findings of fact and adjudged that the appellees doing business as Auto Finance and the appellee The First State Bank of Osborne recover judgments against the defendants Cox in the sums of $1,941.24 and $410.40, respectively, together with interest, and adjudged their liens to be first and prior and that they be first satisfied out of funds impounded from the sale of the house trailer. It further adjudged that The State Bank of Satanta take nothing except such balance, if any, which might remain after satisfaction of the judgments of Auto Finance and The First State Bank of Osborne, and after satisfaction of the claim of the appellant, Home Finance Corporation, Inc., upon a determination of the sum owing appellant by defendants Cox.

The facts pertinent to this appeal are summarized: Home Finance claimed the right to possession under a chattel mortgage given by Charles R. Cox and Irma M. Cox, husband and wife, to Roush Mobile Home Sales of Grand Island, Nebraska, on October 27, 1959. The sale was made and the chattel mortgage given in Nebraska. The chattel mortgage was assigned to Home Finance and recorded on the certificate of title issued to defendants Cox for the house trailer in Nebraska in accordance with Nebraska law, but was not recorded in Kansas. It showed that defendants Cox were residents of Oberlin, Kansas. The house trailer was delivered to them in Kansas by Roush Mobile Home Sales on November 6, 1959.

Auto Finance claimed the right of possession under a chattel mortgage given by defendants Cox at Osborne, Kansas, on December 9, 1959. The house trailer was located at Long Island, Kansas, at that time. That chattel mortgage was later recorded in Norton and Decatur Counties. No liens were of record in any county in Kansas against the house trailer when that chattel mortgage was given. The First State Bank of Osborne claimed the right of possession under a chattel mortgage given by defendants Cox at Osborne, Kansas, on December 18, 1959. That chattel mortgage was subject to the chattel mortgage of Auto Finance, and it was also recorded in Norton and Decatur Counties.

Appellant cross-appellee, The State Bank of Satanta, claimed the right of possession under bills of sale given it on August 8, 1960, by defendants Cox, which were recorded in Decatur County. Its claim was conceded to be inferior to the claims of Auto Finance and The First State Bank of Osborne.

Defendants Cox were never residents of Nebraska during any of the time mentioned; they were residents of Decatur and Norton Counties, Kansas, and the house trailer has been located in Decatur and Norton Counties since Mobile Sales delivered it at Oberlin on November 6, 1959.

Home Finance first contends the district court erred in holding that its chattel mortgage was not a first lien and prior to the claims of Auto Finance and the Osborne bank. As previously indicated, its chattel mortgage was recorded on the certificate of title to the house trailer. In *Securities Credit Corp. v. Pindell*, 153 Neb. 298, 44 N. W. 2d 501, the supreme court of Nebraska interpreted Sec. 60-110, Revised Statutes of Nebraska, 1943 (Reissue of 1960), and held that the Certificate of Title Act of that state eliminated the practice of filing and recording chattel mortgages on motor vehicles in the chattel mortgage records and substituted the recording of such mortgages on the certificate of title itself. Hence, the validity of Home Finance's chattel mortgage and the procedure of recording it under applicable Nebraska law presents no question in this appeal.

With commendable frankness Home Finance concedes that the principal question presented is whether, having a valid chattel mortgage under the laws of Nebraska, its lien is entitled to recognition and enforcement in the courts of Kansas. Under rules of comity between states, the general rule is that where a chattel mortgage has been properly filed of record in the state in which it was given, the courts of other states will recognize such chattel mortgage where the property is removed from the state in which the original mortgage was given upon the basis that the constructive notice imparted by the recording of such mortgage is not confined to the county or state where the mortgage was executed and the property then was, but covers the property wherever it is removed. This rule has been the settled law in Kansas since the case of *Handley v. Harris*, 48 Kan. 606, 29 Pac. 1145, was decided in 1892. See, also, *National Bank v. Massey*, 48 Kan. 762, 30 Pac. 124.

In *Hess-Harrington, Inc., v. State Exchange Bank*, 155 Kan. 118, 122 P. 2d 739, which involved the priority of a chattel mortgage given and recorded in Missouri on an automobile subsequently brought into Kansas and mortgaged to the defendant bank, this court said that when the property was removed from Missouri with

the knowledge and consent of the mortgagee it was then necessary to record the mortgage in Kansas to preserve its lien. It was held:

"The general rule is that where a chattel mortgage has been properly filed and thereby priority of lien is preserved, upon the removal of the mortgaged property to another state it is not necessary in order to preserve the lien that the mortgage be filed in the state to which removal has been made.

"The above rule is subject to a well-recognized exception, and that is, it is not applicable if the mortgagee knows of or consents to the removal." (Syl. ¶¶ 1 and 2.)

Since that decision, the question has not been squarely before this court, but in *Citizens State Bank v. Farmers Union Livestock Cooperative Co.*, 165 Kan. 96, 193 P. 2d 636, Hess-Harrington was cited with approval as being the law of this state, and we reaffirm the exception to the general rule of comity as announced in that decision. See 13 A. L. R. 2d 1312, where the exception to the general rule of comity is well annotated.

The district court applied the exception to the general rule of comity as stated in Hess-Harrington, and Home Finance advances two reasons why the exception to that rule is not here applicable. It first contends that Hess-Harrington was based on chattel mortgage registration laws and did not involve a law similar to Sec. 60-110, Revised Statutes of Nebraska, 1943, which provides for the recording of chattel mortgages on certificates of title to motor vehicles, and second, that Auto Finance, the Osborne bank, and the Satanta bank had implied knowledge of its chattel mortgage because it was recorded on the certificate of title, making it unnecessary to record the mortgage in Kansas. With respect to the first contention, it cites and relies upon *Hinton v. Bond Discount Company*, 214 Ark. 718, 218 S. W. 2d 75, 13 A. L. R. 2d 1354, and *Universal C. I. T. Credit Corp. v. Vogt*, 165 Neb. 611, 86 N. W. 2d 771, which hold that the notation of the lien of a chattel mortgage on the certificate of title gives such lien priority over the rights of third parties acquired in another state after the removal of the property. It then argues that there is a vast difference between the situation passed upon in Hess-Harrington and the case at bar, since that case was based on local chattel mortgage registration laws which have no means of giving notice to persons in another state, and did not involve a law similar to the Nebraska statute which provides a means of notice to all persons dealing with such vehicles. We have carefully examined the authorities cited by Home Finance but they do not involve, as here, the priority of a chattel mortgage properly

noted on the certificate of title in the state where it was given and liens of subsequent chattel mortgages given by the mortgagor after removal of the property to another state with the knowledge and consent of the original mortgagee.

Conceding that Hess-Harrington did not pass on a law similar to the Nebraska statute, does that fact make the exception to the general rule of comity inapplicable to the case at bar? We think not. The real test in applying the exception to the general rule of comity is whether the property was removed with the knowledge and consent of the mortgagee. (*Moore v. Keystone Driller Co.*, 30 Ida. 220, 163 Pac. 1114, L. R. A. 1917 D, 940.) The form or manner of recording the chattel mortgage in the state from which the property was removed is immaterial. That being the case, the contention that the exception to the general rule of comity as adopted in Hess-Harrington is inapplicable because the chattel mortgage was properly recorded on the certificate of title to a motor vehicle, cannot be sustained.

Home Finance advances various reasons in support of its contention that Auto Finance, the Osborne bank and the Satanta bank had implied knowledge of the existence of its mortgage. It argues that both Kansas and Nebraska are known as "title" states; that both states require certificates of title to motor vehicles which includes trailers (G. S. 1961 Supp., 8-126 [a] [h]); that in Kansas (G. S. 1961 Supp., 8-135) as well as Nebraska (60-110, R. S. 1943) the purpose of a certificate of title is to prove ownership of a motor vehicle which must have liens against the vehicle endorsed thereon; that knowledge of the existence of certificate of title statutes places persons dealing with motor vehicles in the position of checking certificates of title or being charged with the notice of what the certificate of title discloses, and that G. S. 1961 Supp., 8-135, supersedes G. S. 1949, 58-301, *et seq.*, with respect to the recording of liens and encumbrances against motor vehicles, making it unnecessary that chattel mortgages thereon be recorded pursuant to that section. Home Finance then points out that defendants Cox were living in Long Island, Kansas, when they obtained the loans from Auto Finance and the Osborne bank; that while the manager of Auto Finance made inquiry to determine the existence of the house trailer and its location, he made no request to see the certificate of title when the loan was made although the record indicated he was dealing with strangers, and that the same failure to check or examine

the certificate of title applies to the Osborne bank and the Satanta bank. We do not agree.

We have two recording statutes in this state. The first is our general recording statute (G. S. 1949, 58-301, *et seq.*) pertaining to the recording of liens and encumbrances on personal property, which provides, without regard to certain exceptions not here important, that every such mortgage shall be void against subsequent mortgagees in good faith unless the mortgage or a true copy thereof shall be deposited in the office of the register of deeds of the county where the mortgagor resides; the second is our title registration act (G. S. 1949, 8-126, *et seq.*, as amended) pertaining to the registration of motor vehicles and providing for the transfer of ownership thereof and for certificates of title thereto, which was enacted in 1937 (Laws of 1937, Ch. 72, Sec. 5).

Since motor vehicles are generally considered not ordinary chattels, Kansas, along with many other states, enacted legislation in the form of certificate of title statutes to prove ownership of the vehicles and to show liens and encumbrances against the same. That is one of the purposes of our statute (G. S. 1961 Supp., 8-135). The purport and effect of that section is substantially the same as when enacted, and when Hess-Harrington was decided some five years later. The section is too lengthy to be quoted, but, generally speaking, it provides that an owner shall make an application for certificate of title which shall contain all liens and encumbrances on the motor vehicle and when issued, all liens shall be noted thereon (Sec. 8-135 [c] [1]); that an assignment of the certificate of title by the owner shall contain a statement of all liens or encumbrances thereon at the time of the assignment; that dealers' bills of sale shall contain a statement of liens and encumbrances and that any sale without an assignment of the certificate of title as provided in the Act shall be fraudulent and void (Sec. 8-135 [c] [2] [3] [6]). In passing, we note the section contains no requirement or provision for noting a lien on a certificate of title other than by a vendor. Neither Auto Finance nor the Osborne bank was of that category.

As in Nebraska (60-110), the statutes of some of the other states contain clear and unambiguous language that the notation of a lien or encumbrance on the certificate of title shall be in lieu of the filing and recording of such lien or encumbrance under their general recording statutes. The Nebraska statutes specifically provide that "the chattel mortgage registration act" shall never be construed to

apply to or permit or require the deposit, filing, or other record whatsoever of a chattel mortgage, conditional sales contract, and so forth, and if the same be noted on the certificate of title by the county clerk then such mortgage or conditional sales contract shall be valid as against the creditors and subsequent purchasers of the mortgagor. Thus, it is clear the Nebraska certificate of title act clearly supersedes the chattel mortgage registration act of that state insofar as it pertains to motor vehicles. On the other hand, statutes of other states neither provide for nor imply that the certificate of title law replaces their general recording statutes with respect to motor vehicles. Kansas is such a state. There is nothing in Sec. 8-135 to indicate a legislative intent to repeal by implication our mortgage registration law or that it supersedes Sec. 58-301, *et seq.* Had the legislature so intended, clearer language is needed. Hence, we turn to our decisions to see what has been held in particular cases. The point was raised in *Rauh v. Dumler,* 170 Kan. 698, 704, 228 P. 2d 694, but it was not decided. Without detailing our decisions it may be said, generally speaking, that in cases involving possessary rights to a motor vehicle, a subsequent innocent purchaser will prevail over a mortgagee who properly records his chattel mortgage but fails to note the lien on the certificate of title (*General Motors Acceptance Corp. v. Davis,* 169 Kan. 220, 218 P. 2d 181, 18 A. L. R. 2d 808; *Raub v. Dumler,* supra; *Universal Finance Corp. v. Schmid,* 177 Kan. 414, 280 P. 2d 577; *Trapani v. Universal Credit Co.,* 151 Kan. 715, 100 P. 2d 735; *Sorensen v. Pagenkopf,* 151 Kan. 913, 101 P. 2d 928), and a purchaser of a new motor vehicle from a registered dealer is not required to examine the records to ascertain whether there is a chattel mortgage on file against it where no certificate of title has been issued upon which the lien of the chattel mortgage might be noted. (*Trapani v. Universal Credit Co.,* supra; *Sorensen v. Pagenkopf,* supra.) That being the case, the vendor-mortgagee or his subsequent assignee is required to comply with both Sec. 8-135 and 58-301 by recording the chattel mortgage in the proper county and noting the lien on the certificate of title (U. of Kan. L. Rev., Vol. 9, Case Notes, pp. 459, 460, 461). Whether the policy of this law is good or bad is not for us to decide. The wisdom or policy of a legislative act is a matter for the legislature to determine. This court is required to give effect to legislative acts if they do not violate the constitution and no constitutional infirmity is here suggested.

Under the general rule of comity, if Home Finance did not have knowledge or consent to or acquiesce in the removal of the house trailer to Kansas it should prevail. On the other hand, if it had knowledge, consented to or acquiesced in the removal of the trailer to Kansas where its mortgage was not recorded, its rights would be subordinate to those of subsequent mortgagees or purchasers for value. (*Hess-Harrington, Inc., v. State Exchange Bank*, supra.) It would then stand in the position of an owner of an unrecorded chattel mortgage which would not impart notice to third parties. To preserve its lien, it would be required to record its mortgage in the same manner as a Kansas vendor-mortgagee or assignee having a chattel mortgage on similar property.

As we have seen, Mobile Homes delivered the house trailer to the defendants Cox at Oberlin on November 6, 1959, and thereafter assigned the certificate of title to Home Finance on November 9, 1959. It was not until November 24, 1959, some fifteen days after the house trailer had been delivered in Kansas, that Home Finance presented the certificate of title to the county clerk of Hall County, Nebraska, for the purpose of having its chattel mortgage noted thereon. Moreover, the defendants Cox resided in Kansas at the time of the purchase of the house trailer which fact appeared upon the face of the chattel mortgage and upon the Nebraska certificate of title when it was finally procured, and further, all payments made by defendants Cox and all correspondence from them to Home Finance were forwarded from Kansas. We think it may fairly be said that Home Finance had it within its power to protect itself. It could have enforced its mortgage promptly upon default of payment on the note or it could have filed its mortgage in the proper Kansas county thereby giving notice to purchasers or subsequent mortgagees in this state. It did neither. Instead, it left the property in this state for over ten months having no knowledge or information as to the location of the property other than that which appeared on the chattel mortgage, the certificate of title, and correspondence from defendants Cox. Under these circumstances, it must be said that Home Finance not only had knowledge but consented to the removal of the house trailer, and the priority of its chattel mortgage was not preserved for its benefit against the claims of subsequent chattel mortgages or liens given by the defendants Cox in Kansas.

Home Finance lastly contends that the district court erred in hold-

ing the note and chattel mortgage of Auto Finance was not in violation of the Consumer Loan Act (G. S. 1961 Supp., Ch. 16, Art. 2 and 4). While the question of usurious interest was raised in the answer of Irma M. Cox, one of the makers of the note and mortgage, Charles R. Cox, her former husband, never raised the question. She apparently withdrew from the case and neither she nor her attorney appeared at the hearing when the facts were stipulated, or at any subsequent time throughout the trial and argument of the case, nor did she appeal from the judgment rendered in favor of Auto Finance. Home Finance now attempts to raise the question of usurious interest, but there was no mention made in the stipulation of the facts or in the findings of the district court with respect to such interest, and in the absence of a finding on the question, the point is not reviewable upon appeal. (*Young v. Barker,* 185 Kan. 246, 342 P. 2d 150.)

We turn now to the contention of the Satanta bank that the district court erred in holding the bills of sale given it by the defendants Cox did not constitute a mortgage. The basic question on this point is whether the parties to the written agreement of August 8, 1960, intended the bills of sale to certain personal property including the house trailer to be a mortgage or an outright sale. Home Finance concedes that under certain circumstances a naked bill of sale if given as security may constitute a mortgage. It argues, however, in the cases holding that a bill of sale can be a mortgage, no written agreement was involved.

Highly summarized, the agreement provided that defendants Cox execute the bills of sale to secure an indebtedness to the Satanta bank; that the bank was to sell the property at public sale, discharge its indebtedness and that of Auto Finance and the Osborne bank, and "Any excess from the sale of the above described personal property over and above the expense of sale and the indebtedness . . . will be refunded to first party and her husband, Charles R. Cox."

A bill of sale absolute on its face will be deemed a mortgage if intended as such by the parties, that is, if it is given merely as security for a debt, or, as some of the authorities state the rule, if the relationship of debtor and creditor remains after the execution of the bill of sale. That is true not only as between the parties to the transaction but also as to third persons who are affected with notice. Where a bill of sale is intended as security for money lent and is

accompanied by a separate instrument of defeasance, the two instruments must be construed together and constitute a mortgage. (*Youngberg v. Walsh,* 72 Kan. 220, 83 Pac. 973; 10 Am. Jur., Chattel Mortgages, pp. 717-719.)

While the district court determined that the bills of sale constituted an outright sale of the house trailer which was fraudulent and void under G. S. 1961 Supp., 8-135, the rule is well settled that where the only evidence of record is in documentary form, this court is required to decide for itself what the facts establish, substantially in the same manner as it would if it were an original case. (*Brungardt v. Smith,* 178 Kan. 629, 290 P. 2d 1039; *Bauer v. Bauer,* 188 Kan. 153, 360 P. 2d 852; *Hollenbeck v. Lyon,* 142 Kan. 352, 354, 47 P. 2d 63, 99 A. L. R. 652; *Palmer v. Johnson,* 132 Kan. 161, 294 Pac. 874; *White v. Hand,* 190 Kan. 472, 375 P. 2d 616). Here, the facts were stipulated to by the parties which the district court adopted as its findings of fact, and copies of the written agreement of August 8, 1960, and the bills of sale are a part of the record. We are of the opinion that the written instrument of August 8, 1960, when construed together with the bills of sale given by the defendants Cox to the Satanta bank, was intended by the parties to constitute a mortgage rather than an outright sale, and since its lien was properly filed in Decatur County, its mortgage must be held to have priority over that of Home Finance. Accordingly, the judgment of the district court is reversed with directions to require the Satanta bank to sell the personal property and apply the proceeds thereof to its unpaid indebtedness, and enter judgment in favor of the Satanta bank for the balance on the note due and owing from the defendants Cox.

The judgment of the district court adjudicating that the liens of Auto Finance and the Osborne bank were first and prior and that they be first satisfied out of funds impounded from the sale of the house trailer is affirmed, and with respect to the Satanta bank, the judgment that it take nothing is reversed.

It is so ordered.